**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

GERBER SANDOVAL
6420 14th Street NW
Washington, DC 20012

JOSE A. MERCADO LOPEZ
7919 24th Avenue
Hyattsville, MD 20783

JESUS J. CHAVEZ
13501 Ale House Circle, #237
Germantown, MD 20874

     Plaintiffs, on behalf of themselves and
     all similarly situated individuals,

v.

JOHNSON'S LANDSCAPING SERVICE, INC.
7201 Brookville Road
Chevy Chase, MD 20815

JOHNSON'S LANDSCAPING SERVICE,
LIMITED LIABILITY COMPANY
5011 Olney-Laytonsville Road
Olney, MD 20832

JOHNSON FAMILY ENTERPRISES, LLC
5011 Olney-Laytonsville Road
Olney, MD 20832

JAMES H. JOHNSON, III
a/k/a JAMES H. JOHNSON
7201 Brookville Road
Chevy Chase, MD 20815

JAMES C. JOHNSON
12232 Wonder View Way
North Potomac, MD 20878

CHARLES L. JOHNSON
10503 Amherst Avenue
Silver Spring, MD 20902

**COMPLAINT**

**Case No. _____**

**COLLECTIVE ACTION AND
CLASS ACTION REQUESTED**

MATTHEW T. JOHNSON
254 Hamilton Street NW
Washington, DC 20011

      Defendants.

## COMPLAINT

## INTRODUCTION

1.     Defendants employed Plaintiffs as laborers on landscaping and construction projects in the District of Columbia and Maryland. Defendants paid Plaintiffs a flat, daily rate that resulted in denial of overtime pay. Each "day" corresponded to approximately 10 hours, and Plaintiffs were paid the same for each day regardless of how many days (and thus, hours) they worked per workweek. For example, see the following paystub in which Plaintiff Sandoval was paid for 7.4 days — or 74 hours — at a rate of $11.00 per hour across all hours worked.

| JOHNSON'S LANDSCAPING SERVICE, INC. | | | PAYROLL ACCOUNT | | 52621 |
|---|---|---|---|---|---|

**Employee**
Gerber A Sandoval, 11125 Nicholas Drive, Silver Spring, MD 20902

SSN: ***-**-1584
Status (Fed/State): Single/Single
Pay Period: 09/07/2013 - 09/13/2013

Allowances/Extra: Fed-1/0/MD-1/0
Pay Date: 09/20/2013

| Earnings and Hours | Hours | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Daily Wage | 7.40 | 110.00 | 814.00 | 13,968.00 |
| Holiday Pay | | | 0.00 | 315.00 |
| | 7.40 | | 814.00 | 14,283.00 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Federal Withholding | | | -96.00 | -1,410.00 |
| Social Security Employee | | | -50.47 | -885.55 |
| Medicare Employee | | | -11.80 | -207.10 |
| MD - Withholding | | | -56.76 | -661.58 |
| DC - Withholding | | | 0.00 | -191.67 |
| | | | -215.03 | -3,355.90 |

| Adjustments to Net Pay | | | Current | YTD Amount |
|---|---|---|---|---|
| David Dominguez | | | 0.00 | -50.00 |

| Net Pay | | | 598.97 | 10,877.10 |
|---|---|---|---|---|

Johnson's Landscaping Service, Inc.

2.     Plaintiffs bring this action to recover damages for Defendants' willful failure to pay all wages due, including overtime wages, in violation of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the District of Columbia Minimum Wage Act Revision Act

("DCMWA"), D.C. Code, § 32-1001 *et seq.*; the District of Columbia Wage Payment and
Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*, the Maryland Wage and Hour Law
("MWHL"), Md. Code, Lab. & Empl. Art., § 3-401 *et seq.*, and the Maryland Wage Payment
and Collection Law ("MWPCL"), Md. Code, Lab. & Empl. Art., § 3-501 *et seq.*

3.      Plaintiffs bring their FLSA claim as a "collective action" pursuant to 29 U.S.C. § 216(b).
Plaintiffs bring their DCMWA, DCWPCL, MWHL, and MWPCL claims as a class action
pursuant to Fed. R. Civ. P. 23(b)(3). Both the "collective action" and the class action are brought
on behalf of: **Defendants' employees who have been paid an hourly or daily rate at any
point since September 22, 2012, and who were not paid one and one-half times their
regular hourly rate for hours worked in excess of 40 in any one workweek.**

## JURISDICTION AND VENUE

4.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28
U.S.C. § 1367 (supplemental jurisdiction).

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b), because a Defendant resides in this
district, and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in
this district.

## PARTIES

6.      Plaintiff Gerber Sandoval is an adult resident of the District of Columbia.

7.      Plaintiffs Jose A. Mercado Lopez and Jesus J. Chavez are adult residents of Maryland.

8.      Defendant Johnson's Landscaping Service, Inc. ("Johnson's, Inc.") is a Maryland
Corporation. Its principal office is located at 7201 Brookville Road, Chevy Chase, MD 20815.
Its Maryland resident agent for service of process is Defendant Charles L. Johnson.

9.      Johnson's, Inc. was registered to do business in the District of Columbia by Defendant James C. Johnson. Its District of Columbia resident agent for service of process is C T Corporation System, 1015 15th Street NW, Suite 1000, Washington, DC 20005.

10.     Johnson's, Inc. has five active licenses to perform home improvement contractor services and/or home improvement sales in the District of Columbia.

11.     Defendant Johnson's Landscaping Service, Limited Liability Company ("Johnson's, LLC") is a Maryland limited liability company. Its principal office is located at 5011 Olney-Laytonsville Road, Olney, MD 20832. Its Maryland resident agent for service of process is Defendant James C. Johnson.

12.     Defendant Johnson's, LLC was registered to do business in the District of Columbia by Defendant James C. Johnson. This registration has been revoked.

13.     Defendant Johnson Family Enterprises, LLC ("Johnson Enterprises") is a Maryland limited liability company. Its principal place of business is 5011 Olney-Laytonsville Road, Olney, MD 20832. Its Maryland resident agent for service of process is Kevin P. Fay, 25 West Middle Lane, Rockville, MD 20850.

14.     The Johnson Companies operate as a single, integrated enterprise. The remainder of the Complaint refers to Johnson's, Inc., Johnson's, LLC, and Johnson Enterprises collectively as "the Johnson Companies."

15.     The Johnson Companies have some or all of the same owners.

16.     The Johnson Companies have some or all of the same officers and directors.

17.     The Johnson Companies are all in the same line of business: landscaping and home improvement services.

18.     The Johnson Companies utilize their capital and human assets interchangeably and in support of a common and collective business objective.

19.     For example, Plaintiffs, whose paychecks were issued by Johnson's, Inc., would be sent to the "Garden Center" operated by Johnson's, LLC — premises, which are, in turn, owned by Johnson Enterprises — to pick up materials needed for their work.

20.     The Johnson Companies employ some or all of the same individuals and businesses to perform professional services, such as accounting and payroll.

21.     Both Johnson's, Inc. and Johnson's LLC operate under the same Maryland Home Improvement Contractor license, license number 11514.

22.     Both Johnson's, Inc. and Johnson's LLC do business through the same website: http://www.jlsinc.net/.

23.     Johnson's, Inc. and Johnson's LLC hold themselves out as a single, integrated entity. On their website, in their advertisements, in their promotional materials, and elsewhere, these entities do not differentiate between themselves.

24.     At all relevant times, Defendants' enterprise had more than two employees who handled materials that had been produced for interstate commerce.

25.     Defendant James H. Johnson, III is an adult resident of Maryland. He resides at 7201 Brookville Road, Chevy Chase, MD 20815.

26.     Defendant James H. Johnson, III founded the enterprise known as "Johnson's Landscaping Service."

27.     Defendant James H. Johnson, III is the father of Defendants James C. Johnson, Charles L. Johnson, and Matthew T. Johnson.

28.     Defendant James H. Johnson, III owns a controlling interest in the Johnson Companies.

29.     Defendant James H. Johnson, III is also an officer and/or director of the Johnson Companies.

30.     Defendant James H. Johnson, III, along with the other individual Defendants, controls the operations of the Johnson Companies.

31.     Defendant James H. Johnson, III, along with the other individual Defendants, set, controlled, and oversaw Defendants' pay practices.

32.     Specifically, Defendant James H. Johnson, III, along with the other individual Defendants, authorized and oversaw Defendants' practice of paying its employees a daily rate.

33.     Defendant James C. Johnson is an adult resident of Maryland. He resides at 12232 Wonder View Way, North Potomac, MD 20878.

34.     Defendant James C. Johnson is the "General Manager" of the Johnson Companies. He is the son of Defendant James H. Johnson, III.

35.     Defendant James C. Johnson is an owner of some or all of the Johnson Companies.

36.     Defendant James C. Johnson is also an officer and/or director of some or all of the Johnson Companies.

37.     Defendant James C. Johnson, along with the other individual Defendants, controls the operations of the Johnson Companies.

38.     Defendant James C. Johnson, along with the other individual Defendants, set, controlled, and oversaw Defendants' pay practices.

39.     Specifically, Defendant James C. Johnson, along with the other individual Defendants, authorized and oversaw Defendants' practice of paying its employees a daily rate.

40.     Defendant Charles L. Johnson is an adult resident of Maryland. He resides at 10503 Amherst Avenue, Silver Spring, MD 20902.

41.    Defendant Charles L. Johnson is the "Production Manager" of the Johnson Companies. He is the son of Defendant James H. Johnson, III.

42.    Defendant Charles L. Johnson is an owner of some or all of the Johnson Companies.

43.    Defendant Charles L. Johnson is also an officer and/or director of some or all of the Johnson Companies.

44.    Defendant Charles L. Johnson, along with the other individual Defendants, controls the operations of the Johnson Companies.

45.    Defendant Charles L. Johnson, along with the other individual Defendants, set, controlled, and oversaw Defendants' pay practices.

46.    Specifically, Charles L. Johnson, along with the other individual Defendants, authorized and oversaw Defendants' practice of paying its employees a daily rate.

47.    Defendant Matthew T. Johnson is an adult resident of the District of Columbia. He resides at 254 Hamilton Street NW, Washington, DC 20011.

48.    Defendant Matthew T. Johnson is the "Operations and Sales Manager" of the Johnson Companies. He is the son of Defendant James H. Johnson, III.

49.    Defendant Matthew T. Johnson is an owner of some or all of the Johnson Companies.

50.    Defendant Matthew T. Johnson is also an officer and/or director of some or all of the Johnson Companies.

51.    Defendant Matthew T. Johnson, along with the other individual Defendants, controls the operations of the Johnson Companies.

52.    Defendant Matthew T. Johnson, along with the other individual Defendants, set, controlled, and oversaw Defendants' pay practices.

53.     Specifically, Matthew T. Johnson, along with the other individual Defendants, authorized and oversaw Defendants' practice of paying its employees a daily rate that resulted in a denial of overtime compensation.

54.     In his capacity as "Operations and Sales" manager, Matthew T. Johnson personally administered Defendants' unlawful pay practices.

## FACTUAL ALLEGATIONS

### Facts Common to All Similarly Situated Individuals

55.     Plaintiffs and similarly situated individuals worked a typical daily schedule of approximately 7:00 a.m. to approximately 5:00 p.m.

56.     Plaintiffs and similarly situated individuals typically worked five days a week, Monday through Friday.

57.     Plaintiffs and similarly situated individuals typically worked for 10 hours a day.

58.     Plaintiffs and similarly situated individuals typically worked 50 hours in a workweek.

59.     Occasionally, Plaintiffs and similarly situated individuals worked more than 5 days and/or 50 hours in a workweek. For at least some workweeks, Plaintiffs and similarly situated individuals worked up to 6 days and/or 75 hours per workweek.

60.     Defendants required Plaintiffs and similarly situated individuals to report to one of Defendants' yard sites at the beginning and end of each day.

61.     Defendants used the yard sites to store the vehicles, tools, and materials that Plaintiffs and similarly situated individuals used to perform their assigned tasks.

62.     Defendants required Plaintiffs and similarly situated individuals to clock in and out at the yard sites.

63.     Plaintiffs and similarly situated individuals clocked in and out of work with either a punch clock or a hand notation.

64.     Defendants required Plaintiffs and similarly situated individuals to enter the exact minute of when they clocked in or out of their job.

65.     Defendants required Plaintiffs and similarly situated individuals to contemporaneously record their hours worked.

66.     Defendants assigned Plaintiffs and similarly situated individuals to work exclusively within Maryland and the District of Columbia.

67.     Defendants paid Plaintiffs and similarly situated individuals a "daily" rate based on the number of hours worked in a week — in which each day corresponded to a typical 10-hour shift. So, for example, if a Plaintiff worked 55.5 hours in a week, he or she was paid for 5.55 "days."

68.     Defendants paid Plaintiffs and similarly situated individuals the same amount for each "day" regardless of how many "days" (and thus, hours) they worked in a workweek.

69.     Defendants paid Plaintiffs and similarly situated individuals the same rate regardless of whether or not Plaintiffs and similarly situated individuals worked overtime hours in a given workweek.

70.     Defendants paid Plaintiffs and similarly situated individuals with weekly paychecks.

71.     With each weekly paycheck, Defendants issued paystubs to Plaintiffs and similarly situated individuals.

72.     The paystubs that Defendants issued to Plaintiffs and similarly situated individuals did not state the exact number of hours worked in the corresponding workweek.

73.     The paystubs that Defendants issued Plaintiffs and similarly situated individuals stated the number of "days" or fractions of a "day" worked. Every "day" worked corresponded to ten hours, and every twentieth of a "day" corresponded to half an hour of work.

74.     Defendants organized Plaintiffs and similarly situated individuals into the following different divisions: masonry, maintenance, landscaping, carpentry, and lighting.

75.     Defendants assigned Plaintiffs and similarly situated individuals to work for a specific division on each workday.

76.     On occasion, Defendants assigned Plaintiffs and similarly situated  individuals to work in multiple divisions within the same workweek.

77.     Defendants paid Plaintiffs and similarly situated individuals the same daily rate, regardless of whether they worked in multiple divisions within the same workweek.

78.     Defendants paid Plaintiffs and similarly situated individuals the same daily rate across all hours of a workweek, including overtime hours, regardless of which division they had been assigned to.

79.     Defendants paid Plaintiffs and similarly situated individuals the same daily rate, regardless of whether they worked in Maryland or in the District of Columbia.

80.     From approximately September 2012 through approximately June 2013, all of Defendants' hourly employees from all of Defendants' divisions started work each day at Defendants' yard site located at 2612 Garfield Avenue, Silver Spring, MD 20910.

81.     From approximately July 2013 through approximately March 2014, all of Defendants' hourly employees from all of Defendants' divisions started work each day at Defendants' yard site located at 719 Sligo Avenue, Silver Spring, MD 20910.

82.    Starting in approximately April 2014, all of Defendants' hourly employees from Defendants' landscaping division started work each day at Defendants' yard site located at 3812 Farragut Avenue, Kensington, MD 20895.

83.    Starting in approximately April 2014, all of Defendants' hourly employees from Defendants' masonry, carpentry, and maintenance divisions started work each day at Defendants' yard site located in 5011 Olney Laytonsville Road, Olney, MD 20832.

84.    Defendant Matthew Johnson visited the yard sites multiple times a week to review Plaintiffs' and similarly situated individuals' work and to speak with them about their performance.

85.    Defendants held regular employee meetings with Plaintiffs and similarly situated individuals at the yard sites, particularly at 5011 Olney Laytonsville Road, Olney, MD 20832.

**Gerber Sandoval**

86.    Gerber Sandoval ("Sandoval") worked for Defendants from approximately June 2010 until approximately September 17, 2015.

87.    Initially, Defendants employed Plaintiff Sandoval under the pseudonym of "Juan Jose Flores." However, since approximately January 2013, Defendants employed Plaintiff Sandoval under his actual name.

88.    Over the course of his employment, Plaintiff Sandoval worked in Defendants' masonry and landscaping divisions.

89.    Defendants employed Plaintiff Lopez as a laborer in their masonry division from approximately June 2010 to approximately June 2011.

90.    As a laborer in the masonry division, Plaintiff Sandoval's primary job duties included grading, pouring concrete, and laying stone and brick.

91.    As a laborer in the masonry division, Plaintiff Sandoval typically worked on a team of four to five individuals who all performed the same work interchangeably.

92.    Defendants employed Plaintiff Lopez as a laborer in their landscaping division from approximately July 2011 until approximately September 17, 2015.

93.    As a laborer in the landscaping division, Plaintiff Sandoval's primary job duties included cutting grass, raking leaves, trimming bushes and shrubs, and laying mulch.

94.    As a laborer in the landscaping division, Plaintiff Sandoval typically worked on a team of three individuals who all performed the same work interchangeably.

95.    Throughout his employment, Plaintiff Sandoval worked in both Maryland and the District of Columbia.

96.    From 2010 through approximately December 2014, Plaintiff Sandoval worked primarily in Maryland.

97.    From approximately January 2015 through September 2015, Plaintiff Sandoval worked primarily in the District of Columbia.

98.    Defendants paid Plaintiff Chavez the following daily rates across all of his hours, regardless of which division he was working in, and regardless of whether he worked over 40 hours in any one workweek:

| Dates (Approximate) | Per Diem Rate |
|---|---|
| 01/31/2010  -  12/31/2011 | $85.00 |
| 01/01/2012  -  12/31/2012 | $90.00 |
| 01/01/2013  -  05/10/2013 | $95.00 |
| 05/11/2013  -  06/21/2013 | $100.00 |
| 06/22/2013  -  08/30/2013 | $105.00 |
| 08/31/2013  -  05/23/2014 | $110.00 |
| 05/24/2014  -  05/31/2014 | $115.00 |
| 06/01/2015  -  09/19/2014 | $120.00 |
| 09/20/2014  -  05/29/2015 | $123.00 |
| 05/30/2015  -  06/05/2015 | $130.00 |

| 06/06/2015   -   09/17/2015 | $133.00 |
|---|---|

99.     Plaintiff Sandoval regularly worked more than 40 hours in a workweek.

100.     Plaintiff Sandoval worked approximately 1,435.5 hours of overtime over the three years

preceding the filing of this Complaint.

101.     Defendants always paid Plaintiff Sandoval the same rate for each of his hours worked;

Defendants never paid Sandoval an overtime rate for his overtime hours.

102.     Defendants owe Plaintiff Sandoval approximately $8,079.61 in unpaid overtime for his

work in the three years preceding the filing of this Complaint.

### Jose A. Mercado Lopez

103.     Defendants employed Jose A. Mercado Lopez ("Lopez") from approximately October 20,

2012 through approximately January 10, 2014.

104.     Over the course of his employment, Plaintiff Lopez worked in Defendants' masonry,

maintenance, landscaping, and carpentry divisions.

105.     Defendants employed Plaintiff Lopez as a laborer in their masonry division from

approximately October 20, 2012 until approximately January 1, 2013.

106.     As a laborer in the masonry division, Plaintiff Lopez' primary job duties included

grading, pouring concrete, and laying stone and brick.

107.     As a laborer in the masonry division, Plaintiff Lopez typically worked on a team of four

to five individuals who all performed the same work interchangeably.

108.     Defendants employed Plaintiff Lopez to work as a laborer in their maintenance division

from approximately January 1, 2013 through approximately August 2013.

109.     As a laborer in the maintenance division, Plaintiff Lopez' primary job duties included

excavating, laying sod, grading, and planting trees and shrubs.

110.    As a laborer in the maintenance division, Plaintiff Lopez typically worked on a team of three individuals who all performed the same work interchangeably.

111.    Defendants employed Plaintiff Lopez to work as a laborer in their landscaping division from approximately September 2013 through approximately January 10, 2014.

112.    As a laborer in the landscaping division, Plaintiff Lopez' primary job duties included cutting grass, raking leaves, trimming bushes and shrubs, and laying mulch.

113.    As a laborer in the landscaping division, Plaintiff Lopez typically worked on a team of three individuals who all performed the same work interchangeably.

114.    Throughout his employment, Plaintiff Lopez was also occasionally assigned to work as a laborer  in Defendants' carpentry division.

115.    As a laborer in the carpentry division, Plaintiff Lopez' primary job duties included the construction of outdoor decks.

116.    As a laborer in the carpentry division, Plaintiff Lopez typically worked on a team of four to seven individuals who all performed the same work interchangeably.

117.    Throughout his employment, Plaintiff Lopez primarily worked in Maryland. However, on occasion, Plaintiff Lopez also worked in the District of Columbia.

118.    Defendants paid Plaintiff Lopez the following daily rates across all of his hours, regardless of which division he was working in, and regardless of whether he worked over 40 hours in any one workweek:

| Dates (Approximate) | Per Diem Rate |
|---|---|
| 10/20/2012   -   11/09/2012 | $85.00 |
| 11/10/2012   -   05/10/2013 | $90.00 |
| 05/11/2013   -   07/05/2013 | $95.00 |
| 07/06/2013   -   01/10/2014 | $100.00 |

119.    Over the course of his employment by Defendants, Plaintiff Lopez regularly worked more than 40 hours in a workweek.

120.    Defendants always paid Plaintiff  Lopez the same rate for each of his hours worked; Defendants never paid Sandoval an overtime rate for his overtime hours.

121.    Plaintiff Lopez worked approximately 529 hours of overtime over the three years preceding the filing of this Complaint.

122.    Defendants owe Plaintiff Lopez approximately $2,540.13 in in unpaid overtime for his work in the three years preceding the filing of this Complaint.

## Jesus J. Chavez

123.    Defendants employed Jesus J. Chavez ("Chavez") from approximately May 31, 2012 through approximately November 29, 2013.

124.    Over the course of his employment, Plaintiff Chavez primarily worked in Defendants' landscaping division.

125.    As a laborer in the landscaping division, Plaintiff Chavez' primary job duties included cutting grass, raking leaves, trimming bushes and shrubs, and laying mulch.

126.    As a laborer in the landscaping division, Plaintiff Chavez typically worked on a team of three individuals who all performed the same work interchangeably.

127.    Throughout his employment, Plaintiff Chavez primarily worked in Maryland. However, Plaintiff Chavez also regularly worked in the District of Columbia.

128.    Defendants paid Plaintiff Chavez the following daily rates across all of his hours, regardless of which division he was working in, and regardless of whether he worked over 40 hours in any one workweek:

| Dates (Approximate) | Per Diem Rate |
|---|---|
| 05/31/2012   -   11/29/2013 | $125.00 |

129.    Over the course of his employment by Defendants, Plaintiff Lopez regularly worked more than 40 hours in a workweek.

130.    Defendants always paid Plaintiff Chavez the same rate for each of his hours worked; Defendants never paid Sandoval an overtime rate for his overtime hours.

131.    Plaintiff Chavez worked approximately 575 hours of overtime over the three years preceding the filing of this Complaint.

132.    Defendants owe Plaintiff Chavez approximately $3,593.75 in in unpaid overtime for his work in the three years preceding the filing of this Complaint.

## "COLLECTIVE ACTION" ALLEGATIONS

133.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

134.    This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. §216(b).

135.    At all relevant times, Defendants have employed approximately 60 similarly-situated individuals at any given time.

136.    Plaintiffs brings their FLSA claims on their own behalf, and on behalf of: **Defendants' employees who have been paid an hourly or daily rate at any point since September 22, 2012, and who were not paid one and one-half times their regular hourly rate for hours worked in excess of 40 in any one workweek.**

137.    These individuals are similarly situated because:

        a.      They were all paid a "daily" rate.

        b.      The number of "days" that they were paid was calculated by dividing their number of hours worked by 10.

c.      They were all subject to the same timekeeping practices and employment policies.

d.      They all regularly worked overtime.

e.      They were all paid the same rate across all of their hours, regardless of which division they worked in, and regardless of whether they worked more than 40 hours in a workweek.

f.      They all had similar, non-exempt job duties that generally involved manual labor.

g.      They were all paid in the same manner, with a paystub that documented Defendants' failure to pay overtime.

138.    On information and belief, the putative collective action consists of at least 150 past and present employees.

139.    On information and belief, Defendants owe the members of the putative collective action approximately $1,080,000.00 in unpaid overtime wages and liquidated damages under the FLSA.

## CLASS ACTION ALLEGATIONS

140.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

141.    This action is maintainable as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23.

142.    Plaintiffs bring their DCMWA, DCWPCL, MWHL, and MWPCL claims on their own behalf, and on behalf of: **Defendants' employees who have been paid an hourly or daily rate at any point since September 22, 2012, and who were not paid one and one-half times their regular hourly rate for hours worked in excess of 40 in any one workweek.**

143.    On information and belief, the putative class consists of approximately 150 past and present employees.

144.    On information and belief, Defendants owe the members of the putative class action approximately $1,820,000.00 in unpaid overtime wages and liquidated damages under the DCMWA, DCWPCL, MWHL, and MWPCL.

**Numerosity and The Impracticability of Joinder**

145.    The putative class is so numerous that individual joinder of all Members is impracticable.

146.    The putative class consists of approximately 150 individuals.

147.    The majority of putative class members are from other countries, including El Salvador, Honduras, Guatemala, and Mexico.

148.    Many putative class members are applying for residency or citizenship, for which they may depend on a reference from Defendant.

149.    Putative class members live in multiple judicial jurisdictions, including Maryland, Virginia, and the District of Columbia.

150.    The majority of putative class members do not speak, read, or write English.

151.    Virtually all putative class members are low-wage workers.

152.    Many putative class members have claims so small that it would not be feasible for them to pursue their claims independently.

153.    The majority of putative class members are unfamiliar with overtime laws or the FLSA. The members of the putative class are uniformly unaware that they may be entitled to overtime compensation.

154.    This unfamiliarity with overtime laws is, in part, a direct result of Defendants' policy of paying Plaintiffs with paystubs that conceal the actual number of hours worked.

155.    Perhaps as a result, no current or former putative class member has ever filed a lawsuit against Defendants for unpaid overtime, despite regularly working fifty or more hours of work

per workweek — and despite the fact that their paystubs provide clear evidence of Defendants' unlawful practices.

156.    Many members of the putative class sincerely believe that they will be fired if they take any affirmative steps to join this lawsuit.

### Commonality

157.    All putative class members performed similar, non-exempt job duties that involved manual labor.

158.    All putative class members were paid a "daily" rate.

159.    The number of "days" for which all putative class members were paid was calculated by dividing their number of hours worked by 10.

160.    All putative class members were subject to the same timekeeping practices and employment policies.

161.    All putative class memers reported to the same yard sites at the beginning and end of each workday.

162.    All putative class members regularly worked overtime.

163.    All putative class members were paid the same rate across all of their hours, regardless of which division they worked in, and regardless of whether they worked more than 40 hours in a workweek.

164.    All putative class members were paid in the same manner, with a paystub that documented Defendants' failure to pay overtime.

165.    Not only are there common questions of law and fact; each putative similarly situated individuals' claims are virtually *identical*. Differences between the amounts owed to each

plaintiff may be resolved by a simple formula that takes into account their regular rate of pay and number of hours worked.

## Typicality / Adequacy

166.    Plaintiffs are typical of the putative class members. They worked in four out of Defendants' five divisions, they performed the same job duties as fellow class members, they worked schedules similar to their fellow class members, and they were paid in the same manner as their fellow class members.

167.    There is no reason that Plaintiffs would not vigorously pursue the claims of the putative class.

168.    Undersigned counsel has litigated over 60 cases in state and federal court that implicate the FLSA, DCMWA, DCWPCL, MWHL, and/or MWPCL. He has been counsel in class, collective, and "hybrid" (class + collective) actions.

169.    There is no reason undersigned counsel would not vigorously pursue the claims of the putative class.

## Predominancy / Superiority

170.    As stated above, the questions of fact and law are nearly identical between putative class members.

171.    It is far more efficient to litigate the claims of the putative class in one single case than it would be for the Court to preside over dozens of nearly identical lawsuits.

172.    Given the demographic characteristics of the putative class, it is in the interests of putative class members to litigate these claims as efficiently as possible.

173.    Separate actions would only serve to limit Defendants' liability at the expense of the rights provided to low-wage workers under the DCMWA, DCWPCL, MWHL, and MWPCL.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

174.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

175.    Plaintiffs and similarly situated individuals were "employees" of Defendants within the meaning the FLSA, 29 U.S.C. § 203(e)(1).

176.    Plaintiffs and similarly situated individuals were "non-exempt" employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 213.

177.    Defendants were "employers" of Plaintiffs and similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 203(d).

178.    The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. § 207(a)(1).

179.    Defendants violated the FLSA by knowingly failing to pay Plaintiffs and similarly situated individuals at least one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

180.    Defendants' violations of the FLSA were willful.

181.    For their violations of the FLSA, Defendants are liable to Plaintiffs and similarly situated individuals for unpaid overtime compensation, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE DCMWA

182.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

183.    The DCMWA requires employers to pay non-exempt employees one and one-half times

their regular hourly rate for hours worked in excess of 40 hours in any one workweek. D.C. Code

§ 32-1003(c).

184.    Defendants violated the DCMWA by knowingly failing to pay Plaintiffs and similarly

situated individuals one and one-half times the required minimum wage for hours worked in

excess of 40 hours in any one workweek.

185.    Defendants' violations of the DCMWA were willful.

186.    For their violations of the DCMWA, Defendants are liable to Plaintiffs and similarly

situated individuals for unpaid minimum wage and overtime compensation, plus three times the

amount of unpaid wages earned as liquidated damages, plus court costs, reasonable attorneys'

fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## FAILURE TO PAY WAGES UNDER THE DCWPCL

187.    Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

188.    The DCWPCL requires employers to pay an employee who quits or resigns all wages due

upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever

is earlier. D.C. Code § 32-1303(2).

189.    For purposes of the DCWPCL, "wages" includes, among other things, overtime wages.

D.C Code § 32-1301(3).

190.    Defendants violated the DCWPCL by knowingly failing to pay Plaintiffs and similarly

situated individuals all wages to which they were legally entitled.

191.    Defendants' violations of the DCWPCL were willful.

192.    For their violations of the DCWPCL, Defendants are liable to Plaintiffs and similarly

situated individuals for unpaid wages, plus three times the amount of unpaid wages as liquidated

damages, plus court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT IV
### FAILURE TO PAY OVERTIME WAGES UNDER THE MWHL

193.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

194.    Defendants were "employers" of Plaintiffs and similarly situated individuals within the meaning of the MWHL, Md. Code, Lab. & Empl. Art. § 3-401(b).

195.    The MWHL requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. Md. Code, Lab. & Empl. Art. § 3-415.

196.    Defendants violated the MWHL by knowingly failing to pay Plaintiffs and similarly situated individuals at least one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

197.    Defendants' violations of the MWHL were willful.

198.    For their violations of the MWHL, Defendants are liable to Plaintiffs and similarly situated individuals for unpaid overtime compensation, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT V
### FAILURE TO PAY WAGES UNDER THE MWPCL

199.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

200.    Defendants were "employers" of Plaintiffs and similarly situated individuals within the meaning of the MWPCL, Md. Code, Lab. & Empl. Art., § 3-501(b).

201.    The MWPCL requires employers to promptly pay employees their wages "all compensation that is due to an employee for employment." Md. Code, Lab. & Empl. Art., § 3-501(c)(1).

202.    The "compensation" required to be paid by the MWPCL includes overtime wages. <u>Peters v. Early Healthcare Giver, Inc.</u>, 439 Md. 646, 654 (Md. 2014).

203.    Defendants violated the MWPCL by knowingly failing to promptly pay Plaintiffs and similarly situated individuals all compensation that was due to them.

204.    Defendants' violations of the MWPCL were willful.

205.    For their violations of the MWPCL, Defendants are liable to Plaintiffs and similarly situated individuals for three times the amount of the unpaid overtime wages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated individuals, respectfully request that this Court enter judgment against Defendants, jointly and severally, on all counts, and grant the following relief:

a.    Award Plaintiffs and similarly situated individuals damages comprised of the following overlapping elements:

    i.    unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

    ii.    unpaid overtime wages, plus three times the amount of unpaid minimum and overtime wages earned as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

     iii.     unpaid wages, plus three times the amount of unpaid wages earned as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

     iv.     unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the MWHL, Md. Code, Lab. & Empl. Art., § 3-427;

     v.     three times the amount of the unpaid overtime wages, pursuant to the MWPCL, Md. Code, Lab. & Empl. Art., 3-507.2;

b.     Award Plaintiffs and similarly situated individuals pre-judgment and post-judgment interest as permitted by law.

c.     Award Plaintiffs and similarly situated individuals reasonable attorneys' fees and expenses incurred in the prosecution of this action;

d.     Award Plaintiffs and similarly situated individuals court costs; and

e.     Award any additional relief the Court deems just.

Date: 09/23/2015          Respectfully submitted,

          /s/Justin Zelikovitz, Esq.
          Justin Zelikovitz, # 986001
          LAW OFFICE OF JUSTIN ZELIKOVITZ, PLLC
          519 H Street, NW
          Washington, DC 20001
          Phone: (202) 803-6081
          Fax: (202) 683-6102
          justin@dcwagelaw.com

          *Counsel for Plaintiffs*